MICHAEL J. COLLINS, Plaintiff, *v.* DOROTHY L. FEBREY, Defendant.

Supreme Court, Erie County, December 31, 1931.

*Haley & Roemhild* [*Joseph Roemhild, Jr.,* of counsel], for the plaintiff.

*William P. Colgan* [*Francis W. Cullen* . of counsel], for the defendant.

NOONAN, J.   Most of the facts are undisputed.   The plaintiff is apparently about seventy-five years old, in feeble health, somewhat deaf, and with a very serious eye trouble.   The parties have known each other as long as the defendant can remember.   The plaintiff was the second husband of her mother, who died on or abou^ February 27, 1917.

For about three years prior to April 1, 1921, the plaintiff lived with the defendant and paid her six dollars per week for his board, lodging, washing and care of his clothes.   On and from September 1, 1919, the defendant has paid all the assessments on said insurance viz., three dollars and seventy-eight cents every two weeks.

Shortly before April 1, 1921, the plaintiff offered to assign said insurance to the defendant and give her $500 if she would agree to support and care for him as long as he lived.   This offer was accepted by defendant, the money paid and the insurance assigned to her, and she voluntarily gave the plaintiff, in writing, the following:

*" April* 1, 1921.

" This is to certify that I or my heirs promise to keep as long as he (Michael J. Collins) lives.   In consideration for $500.00 in cash and to be beneficiary in the C. B. L. insurance for Three thousand Dollars.

" DOROTHY L. FEBREY."

After the foregoing agreement was consummated, the plaintiff lived most of the time with defendant until about August 1, 1925, without any further cost to himself.   Some time in 1922 he came home intoxicated, got $300 from defendant and left for a short time.   Later on the same thing occurred and plaintiff got $200 from defendant.   The plaintiff admits drinking but denies being intoxicated.

Although it is clearly established that the $500 which the defendant received under the contract has been repaid to plaintiff, it also was shown, by canceled checks, that $550 more of plaintiff's money had passed through defendant's hands, but there was no satisfactory explanation thereof offered by either party.

On January 1, 1922, under orders from the Superintendent of Insurance, $1,158.47 was charged against the benefit certificate because previous assessments were too low.   This deduction also draws interest at four per cent per annum.   This yearly interest

is $46.35, if only simple interest is charged, and for ten years, to January 1, 1932, would be $463.50, making a total lien against the certificate, on that date, of $1,621.97. The amount paid, to January 1, 1932, by defendant to keep the insurance in effect, $98.28 yearly for twelve and one-fourth years, is $1,203.93. If the defendant could cash in on the certificate at its face value, on January 1, 1932, she would be benefited only $174.10.

Except for two brief periods when plaintiff voluntarily left the home of the defendant, he lived with her from April 1, 1921, to August 1, 1925, or four years and four months, a total of 221 weeks. At $6 per week, the defendant would be entitled to $1,326, and the only possible offset, taking the view of the testimony most favorable to the plaintiff, is the aforesaid $550 which was not claimed by plaintiff in his original complaint.

The only reasons that plaintiff has given for leaving the home of the defendant are " Because I was not used right " and " Because she would not wait on me and give me anything to eat." These statements of the plaintiff are wholly unsupported by any other evidence and are specifically denied by the defendant, and there is no evidence that she ever refused to perform her part of the contract. She admits that she did reprimand the plaintiff when he came home intoxicated and made some disturbance. She had the right to expect proper behavior on the part of the plaintiff.

Although there was the element of chance for both parties, as the plaintiff might live for a few or many years, the contract was a mutual one, and no valid reason for its repudiation has been established. If it can be repudiated *without* any reason, the defendant will lose the $1,203.93 which she has paid to keep up the insurance and would not be properly compensated for the board, lodging and care that she did furnish the plaintiff before he left.

The plaintiff has not offered to place the parties *in statu quo* by paying the defendant for the premiums on the benefit certificate or paying for the board and care that he received for almost four years and four months. This action is brought solely on the theory that plaintiff had a right, with or *without* reason, to repudiate the contract and recover the consideration therefor.

Under the facts in the case, the plaintiff is not entitled to a decision in his favor. The contract was fairly entered into. It was performed in good faith by the defendant until breached by the plaintiff without any justifiable reason for so doing.

" A party who has himself been guilty of a substantial breach of contract cannot rescind the contract because of subsequent refusal or failure to perform by the other party." (3 Williston

Cont. § 1468; *Green* v. *Green*, 9 Cow. 46; *Ketchum* v. *Evertson*, 13 Johns. 359; *Higgins* v. *Eagleton*, 155 N. Y. 466.)

If the defendant had failed to perform her part of the contract, the plaintiff could maintain an action for its rescission (*Dennerlein* v. *Martin*, 247 N. Y. 145; *Rosenwasser* v. *Blyn Shoes, Inc.*, 246 id. 340), but without any failure of performance on her part, the plaintiff cannot maintain his action without first restoring or offering to restore the other party to the *statu quo.* (13 C. J. 619, 629.) This rule is clearly stated in section 1017 of the New York Law of Contracts, as follows: " Where the circumstances are such as to entitle one party at his election to rescind, it is the general rule that the contract must be rescinded in toto or not at all, and where the contract has been executed in whole or in part and the party seeking to rescind has received a benefit he must, as a general rule, to entitle him to rescind, first offer to return that which he has received so that the parties may be put in *statu quo.*"

Upon the facts and the law, the defendant is entitled to a judgment dismissing the complaint.

Prepare findings accordingly.